IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

OSCAR GARNER,

                 Plaintiff,

  v.

WARDEN FOSTER, NURSE JENSEN, NURSE
PRACTITIONER TAPIO, FOOD SERVICE
MANAGER WILSON, NURSE GWENDOLYN,
REGINA DE TRANA-HINRICHS, and
RYAN D. HOLZMACHER,

                 Defendants.

OPINION and ORDER

18-cv-552-jdp

---

Pro se plaintiff Oscar Garner is an inmate at Waupun Correctional Institution (WCI). I granted him leave to proceed on Eighth Amendment claims concerning the denial of a medically necessary no-dairy diet by defendant WCI employees. He has filed three motions: (1) a motion for a protective order, Dkt. 14; (2) a motion for leave to pay for a lawyer using funds from his release account, Dkt. 22; and (3) a motion to amend the complaint, Dkt. 23. For the reasons explained below, I will deny Garner's motion for a protective order without prejudice. I will also deny Garner leave to pay for a lawyer using funds from his release account. I will grant in part and deny in part his motion for leave to amend the complaint. I will treat Dkt. 24 as the operative pleading subject to the limitations discussed below.

**A. Motion for protective order**

Garner provides two reasons in support of his motion for a protective order. First, he says that he anticipates that documents containing "privileged information or protected legal work product" may inadvertently be produced over the course of discovery. Dkt. 24, at 1. He seeks a protective order that would compel the parties to immediately return any such

privileged documents. But Garner is currently proceeding pro se in this matter, so his case should not implicate any documents subject to attorney-client privilege or work-product protection. And in any event, Federal Rule of Civil Procedure 26(b)(5)(B) already provides procedures for inadvertently disclosed privileged documents, so a protective order for this purpose would not be necessary even if Garner were represented by counsel.

Second, Garner says that a protective order is necessary to shield his confidential health information and asks that any future filings containing his medical records be sealed. But Garner has put his medical care in issue by filing this lawsuit, and he has articulated no special reason why this court should depart from "the long-recognized presumption in favor of public access to judicial records." *Matter of Cont'l Illinois Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984).

Garner argues that allowing his medical records to become public record in this case would violate Wis Stat. § 146.82(2) and the Health Insurance Portability and Accountability Act of 1996 (HIPAA). But he cites no authority to indicate that courts have interpreted these provisions to require that medical records actually relevant to litigation be filed under seal. The text of these statutes says the opposite. Wis. Stat. § 146.82(2)(a) permits disclosure of patient health care records "[u]nder a lawful order of a court of record" and "[i]n response to a written request by any federal or state governmental agency to perform a legally authorized function." Wis. Stat. § 146.82(2)(a)(4), (5). And HIPAA contains an express exception for judicial proceedings. *See* 45 C.F.R. § 164.512(e)(1).

As a rule, "[i]nformation that is used at trial or otherwise becomes the basis of decision enters the public record." *Matter of Krynicki*, 983 F.2d 74, 75 (7th Cir. 1992). If Garner can articulate a compelling reason for departing from this presumption, he is free to renew his

motion or to negotiate a joint protective order with defendants. At present, however, it is too soon to say whether documents containing sensitive medical information will be introduced into the record, let alone whether there is any basis for sealing them. I will deny Garner's motion for a protective order without prejudice to his renewing it.

**B. Motion for leave to pay for lawyer using release account funds**

Garner asks me to order WCI to allow him to access his release account funds so that he can pay for a lawyer. He has been in touch with an attorney, Dawn Sabel, who appears open to representing him on a contingency basis if he can make a $500 down payment. He also says that the staff at WCI tell him that they will allow him to access his release account to make that payment, but only if the court issues an order directing them to do so first.

But I cannot simply order the Department of Corrections to give Garner access to his release account. As I have explained to Garner in other cases, *see Garner v. Esser*, No. 17-561, Dkt. 3 (W.D. Wis. Sept. 13, 2017); *Garner v. Kirby*, No. 14-cv-545, Dkt. 68 (W.D. Wis. Aug. 22, 2017), a federal court generally cannot tell state officials how to apply state law. *Smith v. Hepp*, No. 17-cv-396, 2017 WL 4712229, at *2 (W.D. Wis. Oct. 18, 2017) ("It is up to prison officials to decide how to apply the release-account regulations; this federal court generally cannot tell state officials how to apply state law." (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984))). For a federal court to have jurisdiction to grant Garner's request, Garner would need to identify a federal right that entitles him to use his release account for litigation expenses. He has not done so here.

Garner cites *Goodvine v. Ankarlo*, No. 12-cv-134, 2013 WL 1192397, at *2 (W.D. Wis. Mar. 22, 2013) in support of his request for an order authorizing him to use release account funds, but that case is not on point. In *Goodvine*, Judge Conley authorized funds to be

3

withdrawn from a prisoner's trust account to help pay for an expert under Federal Rule of Evidence 706. Rule 706(c) authorizes federal courts to allocate the costs of a court-appointed expert between the parties. There is no analogous federal statute that gives federal courts authority to order the DOC to authorize access to release accounts. *See Sherin v. Pugh*, No. 11-cv-772, 2013 WL 4776462, at *2 (W.D. Wis. Sept. 5, 2013) ("While the Supremacy Clause of the United States Constitution requires state law to give way to a competing federal law in rare instances, there is no federal law that requires state officials to give prisoners money from their release account to pay the costs of prosecuting a civil lawsuit.").

I understand that this creates a frustrating situation for Garner, especially considering the representations by WCI staff that they would be happy to give him access to his release account so long as he has a court order. Garner is free to try to persuade DOC officials to give him access to funds in his release account, but I can't order them to do so unless I have authority under federal law to do so.

**C. Motion to amend**

Garner seeks to amend his complaint to add (1) claims against a new defendant (Nurse Rob) and a defendant I previously dismissed (Health Services Unit Manager Marchant); (2) some additional details and updates relevant to WCI's alleged refusal to provide him with a medically necessary no-dairy diet; and (3) various state-law claims. Dkt. 23. Under Federal Rule of Civil Procedure 15(a)(2), I should freely grant a plaintiff leave to amend the complaint when justice so requires, but not "when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). For reasons stated below, I will grant Garner's motion only in part.

1. **Additional defendants**

Garner proposes to add claims against a new defendant, Nurse Rob. He alleges that Rob is among the WCI staff involved in denying him a no-dairy diet. Garner includes as an exhibit a copy of a "general message" that Nurse Rob sent to Nurse Practitioner Tapio on July 9, 2018, in which Rob states that he "removed the order" for Garner's specialized diet because Garner had not come to see him that day. Dkt. 24-1. I infer from this that Garner is alleging that Nurse Rob was aware of his serious medical need and consciously failed to take reasonable measures to help him, which is sufficient to state an Eighth Amendment deliberate indifference claim. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). So I will allow Garner to proceed in his Eighth Amendment claim against Nurse Rob.

Garner also seeks to re-allege claims against Health Services Unit Manager Marchant. I previously dismissed Marchant because Garner had not alleged that she had knowledge of his lactose intolerance or the fact that he has not been receiving dairy-free meals. Dkt. 4. To be liable under § 1983, a defendant must have some personal involvement in the constitutional deprivation. *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003). In his amended complaint, Garner alleges that, in response to his complaints about continuing to receive dairy products in his meals, Marchant wrote to Garner on August 5, 2018, to say that he was "scheduled to see nursing" and that he "need[ed] to have an evaluation." Dkt. 24, ¶ 37. This allegation offers only tenuous support for a claim of deliberate indifference, because it suggests that Marchant was at least somewhat responsive to Garner's asserted need for medical attention. But construing the allegations generously, I conclude that Garner has alleged that Marchant was aware of his lactose intolerance but delayed in taking effective action to address it. So I will allow him to proceed on Eighth Amendment claims against Marchant as well.

### 2. Additional details

Garner's amended complaint contains several new paragraphs, some of which provide additional background details or updates that postdate the filing of his original complaint. *See* Dkt. 24, ¶¶ 30–33; 35–36; 38. For instance, he notes that his medical file contains several pieces of documentation corroborating his lactose intolerance. *Id.* ¶¶ 31, 32, 35. He also provides additional detail about when he receives his meals, *id.* ¶ 36 ("about an hour after they are made in the kitchen"), and the inconsistent manner in which he received medication for lactose-related symptoms in August and September of 2018. *Id.* ¶ 38 (noting that his medication has been discontinued and re-initiated twice). These allegations provide additional context, but they do not state new claims against the defendants. I will allow Garner to add these details.

### 3. State-law claims

Garner's amended complaint asserts four new state-law causes of action. Garner bases these claims on the same facts that underlie his Eighth Amendment claims, and he asks me to exercise supplemental jurisdiction over them. For reasons explained below, I will dismiss the first and second state-law claims, but I will allow Garner to proceed on the breach of contract and negligence claims.

First, Garner asserts a cause of action based on defendants Marchant, Gwendolyn, Wilson, Jensen, and Tapio's alleged violations of unspecified "policies of Wisconsin Dept. of Corr." Dkt. 24, at 5. But DOC administrative policies do not provide prisoners with private causes of action. *See Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 74–79, 307 N.W.2d 256, 266–68 (1981) (right of action to enforce statute or regulation does not exist unless directed or implied by legislature). If Garner believes that defendants are applying

department policy improperly, his recourse is to file a grievance or to petition for a writ of certiorari in state court. *Outagamie Cty v. Smith*, 38 Wis.2d 24, 34–35, 155 N.W.2d 639, 645 (1968) (laws not expressly made enforceable by statute are reviewable only by certiorari). Whether policies were followed might be relevant at trial, but I will not allow Garner to assert these policies as a separate cause of action.

Second, Garner asserts a claim for supervisory negligence against Marchant and Foster for failure to supervise or train the other defendants.[1] Dkt. 24, at 5. To state a claim for negligent training or supervising in Wisconsin, Garner must show (1) that the defendants had a duty of care; (2) that the defendants breached that duty; (3) that the acts or omissions of defendants' subordinates were a cause of Garner's injury; and (4) that the acts or omissions of the defendants were a cause of the wrongful acts of their subordinates. *Miller v. Wal-Mart Stores, Inc.,*, 219 Wis.2d 250, 267–68, 580 N.W. 2d 233 (1998) (recognizing tort of negligent supervision under Wisconsin law). Here, Garner's allegations of negligent supervision are purely conclusory; he offers nothing, beyond the fact that his requests for a no-dairy diet were ignored, to support his claim that Marchant and Foster failed to supervise or train their subordinates. More is needed to state a claim. *See Smith v. Dickman*, No. 12-cv-743, 2013 WL 6148439, at *2 (W.D. Wis. Nov. 22, 2013) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are insufficient to establish a plausible claim." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007)). So I will deny Garner leave to proceed on claims of supervisory negligence.

---

[1] Although Garner refers to claims two through four as "state constitutional claims," these claims do not implicate the state constitution. Rather, they are state-law claims arising under the common law of torts and contract.

Third, Garner asserts a breach of contract claim against all defendants based on their alleged breach of a settlement from his prior case, *Garner v. Sumnicht*, No. 11-cv-829 (W.D. Wis. Dec. 14, 2011). To state a claim for breach of contract, Garner must allege: (1) the existence of a contract creating obligations flowing from defendant to plaintiff; (2) a breach of those obligations; and (3) damages from the breach. *Northwestern Motor Car, Inc. v. Pope*, 51 Wis.2d 292, 293, 187 N.W.2d 200 (1971). I have not seen any copy of the settlement agreement from *Garner v. Sumnicht*, but reading Garner's complaint generously, I infer that such a settlement exists, that it creates obligations on the part of the defendants respecting Garner's medical and dietary needs, and that defendants have breached that settlement and harmed Garner. I will allow Garner to proceed on the breach of contract claims.

Fourth, Garner alleges that all of the defendants were negligent. Under Wisconsin law, a claim for negligence "requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 242 Wis.2d 507, 520, 625 N.W.2d 860 (2001). Garner's allegations that defendants knew about his severe lactose intolerance yet took no action to ensure he received a no-dairy diet are sufficient to state a claim for negligence. Garner also states that he has complied with the notice-of-claim requirement in Wis. Stat. § 893.82. So I will allow Garner to proceed with his state-law negligence claims against all defendants.

ORDER

IT IS ORDERED that:

1. Plaintiff Oscar Garner's motion for a protective order, Dkt. 14, is DENIED.

2. Garner's motion for leave to use release account funds to pay litigation expenses, Dkt. 22, is DENIED.

3. Garner's motion for leave to amend the complaint, Dkt. 23, is GRANTED in part and DENIED in part, consistent with the analysis above.

4. Garner is now GRANTED leave to proceed on the following claims:

    a. Eighth Amendment deliberate indifference claims against defendants Warden Foster, Nurse Jensen, Nurse Practitioner Tapio, Food Service Manager Wilson, Nurse Gwendolyn, Regina De Trana-Hinrichs, Ryan D. Holzmacher, Nurse Rob, and Health Services Unit Manager Marchant.

    b. State-law breach of contract and negligence claims against the defendants listed above.

Entered December 13, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge